**The below described is SIGNED.**



**Dated: June 20, 2014**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In Re:<br><br>C.W. MINING COMPANY, doing business as Co-Op Mining Company,<br><br>       Debtor.<br>_____<br><br>GARY E. JUBBER, Trustee,<br><br>       Plaintiff,<br>   vs.<br><br>DEFENDANTS RE HIAWATHA COAL PROCEEDS, including:<br>**09-2047,** Standard Industries, Inc., ABM, Inc. Fidelity Funding Company, Security Funding, Inc., World Enterprises, and Utah American Energy, Inc.<br>**09-2248,** C.O.P. Coal Development Company, Hiawatha Coal Company, Inc. And ANR, Inc., Paul Kingston, an individual, Joseph O. Kingston, an individual, and Charles Reynolds, an individual, John David Kingston, Jr., an individual, World Enterprises, Standard Industries, Inc., Fidelity Funding Company, Security Funding, Inc., ABM, Inc.<br>**09-2375,** C.O.P. Coal Development Company, Hiawatha Coal Company, Inc. ABM, Inc., World Enterprises, Standard Industries, Inc., Fidelity Funding Company, Security Funding, Inc., Railco, Inc., A-Fab Engineering, Inc., Latter Day Church of Christ | Bankruptcy No. 08-20105<br><br>Chapter 11<br><br><br>Miscellaneous Adversary Proceeding No. 11-8001<br><br>Judge R. Kimball Mosier<br><br>[Consolidated Proceedings Regarding Hiawatha Coal Proceeds Issues]<br><br><br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER DENYING TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT, AND DISMISSING DEFENDANTS' RULE 56(d) MOTION AS MOOT** |

aka Latter Day Church of Jesus Christ,
Intermountain Power Agency, Commonwealth
Coal Services, Inc., Nevada Power Company
and Tennessee Valley Authority.

**10-2739,** Attco Trucking Company, Inc. dba
CTC Trucking and CTC Trucking LLC.

**10-2755,** World Enterprises, a Utah
corporation; World Enterprises, a Nevada
corporation; Mountain Coin Distributors, a
Utah corporation; and Mountain Coin Machine
Distributors, as dba of each of the defendants,

**10-2756,** Golden West Industries, Inc.

**10-2764,** Latter Day Church of Christ

**10-2765,** Fidelity Funding Company

**10-2766,** Fidelity Funding Company

**10-2767,** Fidelity Funding Company

**10-2768,** Fidelity Funding Company

**10-2769,** Railco, Inc.

**10-2770,** Ninth Street Development, LLC,
Ninth Street, Inc.

**10-2771,** Railco, Inc.

**10-2772,** Rachel Young, James Young, Jessica
Young, Fidelity Funding Company, and Carl E.
Kingston, as Trustee under Deed of Trust

**10-2773,** Coalt, Inc.

**10-2774,** N.W.R. Limited Partnership and its
general partner N.U.R., Inc.

**10-2775,** Four Corners Precision Mfg. Co.

**10-2776,** Ninth Street Development, LLC,
Ninth Street, Inc.

**10-2777,** Four Corners Precision Mfg. Co.

**10-2778,** D.U. Company, Inc.

**10-2779,** Railco, Inc.

**10-2780,** Railco, Inc.

**10-2781,** SMC Electrical Products, Inc., Becker
Mining America, Inc.

**10-2782,** L.A. Miller

**10-2783,** Attco Trucking Company, Inc. dba
CTC Trucking, and CTC Trucking LLC
**10-2785,** Graymont Wester US, Inc., Hiawatha
Coal Company and Standard Industries, Inc.
**10-2787,** Standard Industries, Inc.
**10-2789,** America West Marketing, Inc.
Hiawatha Coal Company, Inc. and Standard
Industries, Inc.
**10-2791,** Coalt, Inc.
**10-2810,** Security Funding Company
**10-2816,** Tennessee Valley Authority and
Standard Industries, Inc.
**10-2818,** National Business Management, Inc.
and Ruth Brown dba "NBM"
**10-2819,** National Business Management, Inc.
and Ruth Brown dba "NBM"
**10-2820,** National Business Management, Inc.
and Ruth Brown dba "NBM"
**10-2853,** House of Pumps, Inc.
**10-2855,** Trimac Transportation Central, Inc.
**10-2865,** Standard Industries, Inc.

Defendants.

Once again we are addressing Kenneth A. Ruston's (Trustee)[1] argument that he is entitled to recover the full market value of more than a million tons of coal that C.W. Mining Company (Debtor) did not mine.  This matter has been remanded to this Court  to further address the Trustee's claims that coal the Debtor did not mine is property of the bankruptcy estate, or a proceed, product or profit of property of the bankruptcy estate.  The basic issue on remand is

---

[1] Kenneth A. Rushton was the original chapter 7 trustee in the case.  The case was converted to chapter 11 on February 6, 2014 and Gary E. Jubber was appointed as the chapter 11 trustee.

fairly straight forward.  The Trustee argues that because the Debtor had the exclusive right to mine the coal from property it leased, any coal mined from the leased property and its proceeds is property of the estate.  Stated another way, the Trustee argues that he may seek recovery of the coal that was not mined by the Debtor, as opposed to seeking actual damages the Debtor may have sustained by another's removal of the coal.

The following motions are before the Court:

(a)     The Trustee's Motion For Partial Summary Judgment, Docket No. 155 (Trustee's Motion);

(b)     Cross-Motion of Coal Purchasers for Summary Judgment, Docket No. 168 (Coal Purchasers' Motion), filed by Defendants Intermountain Power Authority, Tennessee Valley Authority, and Commonwealth Coal Services, Inc. (collectively, Coal Purchasers);

(c)     COP et al.'s Motion for Partial Summary Judgment, Docket No. 173, (COP Defendant's Motion) filed by Defendants C.O.P. Coal Development Company (COP), Fidelity Funding Company, Security Funding, Inc., and Standard Industries, Inc. (collectively, COP Defendants);

(d)     Hiawatha Coal Company, Inc.'s Cross-Motion for Partial Summary Judgment, Docket No. 164 (Hiawatha's Motion), filed by Defendant Hiawatha Coal Company, Inc. (Hiawatha); and

(e)     Coal Purchasers' Motion in the Alternative to Defer Decision on Motion of Trustee for Partial Summary Judgment Pursuant to Fed.R.Civ.P.56(d), Docket No. 170 (Rule 56(d) Motion).

# I. JURISDICTION

The jurisdiction of this Court is properly invoked under 28 U.S.C. §§ 1334 and 157(a). This is a proceeding to determine property of the estate under 11 U.S.C. § 541 and is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. §§ 1408 and 1409.

# II. INCORPORATION BY REFERENCE OF FINDINGS OF FACT AND CONCLUSIONS OF LAW SET FORTH IN PRIOR ORDERS

The Court hereby adopts and incorporates herein by reference its prior findings of fact and conclusions of law set forth in the following prior decisions and orders of the Court in this bankruptcy case (the "Incorporated Findings and Conclusions"):

- Memorandum Decision Denying Hiawatha Coal Company, Inc.'s Motion for Partial Summary Judgment, Granting the Chapter 7 Trustee's Cross Motion for Summary Judgment and Striking the Trial Dates of May 27 and 28, 2009, entered May 8, 2009. See Adv. Proc. 08-2338, Docket No. 51;

- Findings of Fact and Conclusions of Law and Order on Objection to C.O.P. Coal Development Company's Cure Claim under March 1997 Coal Operating Agreement (Claim No. 26), C.O.P's Proof of Claim No. 9 and Trustee's First, Third and Fourth Claims For Relief Against C.O.P. In Adversary Proceeding #09-2248, entered November 10, 2009.  See Case No. 08-20105, Docket No. 1000;

- Amended Memorandum Decision Granting in Part and Denying in Part Trustee's Motion for Partial Summary Judgment as to UEI Receivable and Avoidance of Liens, entered December 8, 2009.  See Adv. Proc. No. 09-2047, Docket No. 173;

- Order and Judgment Arising from Trial on November 16, 17, 23, and 24, 2009, entered February 12, 2010.  See Adv. Proc. 08-2338, Docket No. 139;

- Amended Findings of Fact and Conclusions of Law and Order Arising from Trial On December 10, 2010 and January 12, 14, and 19, 2010, entered March 2, 2010.  See Adv. Proc. 08-2338, Docket No. 151;

- Second Amended Order Granting Trustee's Remedy Claim Under Section 550(a) as Against Hiawatha, entered March 2, 2010.  See Adv. Proc. 08-2338, Docket No. 152;

- Amended Memorandum Decision Denying COP Coal Development Company's Motion to Require the Trustee to Assume or Reject Lease and Granting Trustee's Motion to Extend Time for Trustee to Assume or Reject Executory Contracts or Unexpired Leases of the Debtor, entered April 23, 2009.  See Case No. 08-20105, Docket No. 588;

- Statement of Undisputed Facts and Conclusions of Law in Support of Order Granting Summary Judgment, entered July 29, 2011.  See Misc. Adv. Proc. 11-8001, Docket No. 91; and

- Order Granting Defendants' Motion for Summary Judgment in Hiawatha Coal Proceeding, Denying Motion of Trustee for Partial Judgment, Granting Motion for Summary Judgment filed by COP, Granting Motion for Summary Judgment filed by Commonwealth, Intermountain Power Agency, Nevada Power Company, entered July 29, 2011. See Misc. Adv. Proc. 11-8001, Docket No. 92.

### III. MATERIAL FINDINGS OF FACT

The following are selected findings of fact from the foregoing Incorporated Findings and Conclusions which the Court deems material to this matter.

**A.   The Debtor Obtains the Exclusive Right to Mine Coal From the Bear Canyon Mine**

In March 1997, the Debtor and COP entered into a Coal Operating Agreement (Coal Operating Agreement).  The Coal Operating Agreement granted the Debtor "exclusive authority to operate and control" certain tracts of land, commonly known as the Bear Canyon Mine (Mine), for a term of 25 years "for purposes reasonably incident to the mining and removal of coal."  Much of the land identified in the Coal Operating Agreement was leased from the federal government by COP and the remainder was owned in fee by COP. The Coal Operating Agreement did not purport to transfer any ownership or fee title in the tracts of land.   Exercising this exclusive authority, the Debtor mined coal from the both the federal land and the COP fee land until 2008.

Standard Industries, Inc. (Standard) began acting as the Debtor's agent for the sale of coal as early as 2001, and on March 5, 2007, the Debtor and Standard entered into a written Coal Sales Agency Agreement (Agency Agreement).  The Agency Agreement appointed Standard as the Debtor's exclusive sales agent for coal mined during the term of the Agency Agreement. Although the Agency Agreement contains ambiguities, it is not ambiguous with respect to Standard's agency relationship with the Debtor for the collection of payments on coal purchases. The Debtor entered into coal purchase agreements with the Coal Purchasers and directed them to pay Standard for all coal purchased pursuant to these agreements.  The Coal Purchasers paid Standard for coal deliveries made pursuant to their coal purchase agreements with the Debtor.

### B. Hiawatha Takes Possession of the Mine and Mines Coal.

On January 8, 2008 (Petition Date), an involuntary petition against the Debtor was filed. The Debtor continued to operate the Mine after the Petition Date until Charles Reynolds, the Debtor's president, decided that he would attempt to sell the Debtor's assets and rights to the Mine. A purchase and sale agreement dated June 24, 2008 (Sale Agreement) was entered into between the Debtor and Hiawatha. The Sale Agreement contemplated a sale of Debtor's assets and rights to the Mine in exchange for the assumption of secured debts the Debtor owed to various entities.[2]

Possession of the Mine was transferred to Hiawatha after the end of June 2008, and the majority of the Debtor's employees, including Charles Reynolds, went to work for Hiawatha. Hiawatha began operating the Mine using equipment previously used by the Debtor. Hiawatha continued to mine coal from the Mine until June 30, 2009. Most of the coal mined by Hiawatha was sold to the Coal Purchasers who paid Standard for the coal they purchased.

### C. The Trustee Seeks to Recover Possession of the Mine

This Court entered an order for relief on the involuntary petition on September 26, 2008. An order converting the case to Chapter 7 was entered on November 13, 2008 and the Trustee was appointed. Shortly after his appointment, the Trustee filed Adversary Proceeding 08-2338, seeking to avoid the post-petition transfer of the Mine to Hiawatha. The Trustee sought recovery of the "post-petition transfers," defined in his complaint as the Mine and all equipment, personal property, and "other movable assets." The Court granted the Trustee's motion for partial

---

[2] If, or when, the sale was actually consummated is difficult to determine.

summary judgment avoiding the post-petition transfers (Avoidance Order) but did not rule on the Trustee's remedy claim under § 550(a)(1)[3] of the Bankruptcy Code.

The Trustee then initiated Adversary Proceeding 09-2248 against numerous defendants including COP, Hiawatha and Standard.  The Sixth Claim for Relief in this adversary proceeding sought damages against COP, Hiawatha and Standard equal to the "fair market value of the coal taken by Hiawatha in violation of the Debtor's exclusive operating rights under the COP Lease."[4]   The Ninth Claim for Relief sought turnover of the Mine and all assets transferred to Hiawatha.

### D.  The Trustee Asserts That the Coal Mined by Hiawatha is Property of the Estate.

The Trustee then initiated Adversary Proceeding 09-2375 against numerous defendants, seeking, inter alia: (1) a declaratory judgment that the coal Hiawatha had mined after July 1, 2008 (Severed Coal), became property of the estate when it was severed from the Mine's coal seam by Hiawatha;[5] (2) an order requiring Hiawatha, Standard and others to turn over the Severed Coal or its value under § 542(a); (3) a declaratory judgment that the sales of Severed Coal to the Coal Purchasers were void *ab initio* as violations of the automatic stay and a judgment requiring the Coal Purchasers to account for and deliver all the Severed Coal they purchased and received or, if undeliverable, its value; and (4) avoidance of the "post-petition transfers" under § 549 and recovery of the Mine and Severed Coal, or the value thereof, from the Coal Purchasers under § 550.

---

[3] Statutory references herein are to Title 11 of the United States Code, unless stated otherwise.

[4] Adv. Proc. 09-2248, Docket No. 1, ¶ 219A.

[5] Adv. Proc. 09-2375, Docket No. 1, ¶ 44.

**E. The Court Grants the Trustee's § 550 Remedy Claim and Orders Recovery of the Mine.**

The Court heard four days of evidence and oral argument on December 10, 2009 and January 12, 14, and 19, 2010 (Trial) on the following matters: (1) Trustee's Ninth Claim for Relief in Adversary Proceeding #09-2248; (2) Trustee's remedy claim under § 550(a) as against Hiawatha in Adversary Proceeding #08-2338; (3) Trustee's Motion to Assume Coal Operating Agreements and Certain Related Contracts; (4) Trustee's Motion for Order Authorizing Sale of Mine Assets and Assignment of Executory Contracts Under 11 U.S.C. §§ 363 and 365; and (5) ANR Company, Inc.'s (ANR) Motion for Relief from Automatic Stay to Give Notice of Default of ANR Operating Agreement.

Prior to the Trial, the parties stipulated that "to the extent that COP's violations of the automatic stay or breach of the operating agreement, if any, have caused other damages to this estate or its creditors, that all such causation and damage issues shall be preserved for later determination in conjunction with Adversary Proceeding No. 09-2375."[6]

On February 10, 2010 the Court issued its memorandum decision and order arising from the Trial (Remedy Order).[7]   The Court: (1) dismissed the Trustee's Ninth Claim for Relief in Adversary Proceeding #09-2248; (2) granted recovery of the property transferred for the Trustee's remedy claim under § 550(a) as against Hiawatha in Adversary Proceeding #08-2338; (3) granted the Trustee's Motion to Assume Coal Operating Agreements and Certain Related Contracts; (4) granted the Trustee's Motion for Order Authorizing Sale of Mine Assets and

---

[6] Case No. 08-20105, Docket No. 1008.

[7] Case No. 08-20105, Docket No. 1156.

Assignment of Executory Contracts Under 11 U.S.C.  §§ 363 and 365; and (5) denied ANR's

Motion for Relief from Automatic Stay to Give Notice of Default of ANR Operating Agreement.

In granting the Trustee's remedy claim under § 550(a) for recovery of the transferred

property rather than its value, the Court stated:

> 55.   Factors considered by courts in making this decision of whether to order
> recovery of the property or its value include whether the property is recoverable,
> whether the property has diminished in value by virtue of depreciation or
> conversion, whether there is conflicting evidence as to the value of the property,
> and whether the value of the property is readily determinable, and a monetary
> award would result in a savings to the estate.
>
> 56.   All four factors weigh in favor of the trustee recovering the actual assets
> rather than their value. The major assets, particularly possession of the mine, are
> recoverable. Hiawatha mined substantial amounts of coal from the mine during its
> time in possession, and the estate has been diminished as a result. The parties
> dispute the value of the property, and such value is not readily determinable.
> Although a "savings to the estate" may result if certain litigation with Hiawatha
> were terminated, this is insufficient to overcome the remaining factors that weigh
> in favor of the property being recovered rather than its value.[8]

In its order granting the Trustee's remedy under § 550(a) as against Hiawatha in Adversary

Proceeding #08-2338, the Court specifically ordered that "the Trustee's § 550(a) claim is

GRANTED for recovery of the transferred property rather than its value."[9]

Additionally, the Court made clear in its Remedy Order that damages claims associated

with the Trustee's Sixth Claim for Relief in Adversary Proceeding #09-2248 were not tried:

"Based on the evidence presented at trial and the parties' representations as to the contours of the

---

[8] Adv. Proc. 08-2338, Docket No. 136 (citations omitted).

[9] Adv. Proc. 08-2338, Docket No. 138.

[9] Case No. 08-20105, Docket No. 1156.

proposed transactions, the Court is not making any determinations as to … the damages claims associated with the Trustee's Sixth Claim for Relief in Adversary Proceeding #09-2248."[10]

After recovery of the Mine, the Trustee was ultimately successful in finding a buyer and the Mine was sold in August of 2010.  In September of 2010 the Trustee filed 90 adversary proceedings.  Many of the adversary proceedings sought recovery of payments that were not made by the Debtor but the Trustee alleged that the payments were transfers of the Debtor's property.  Specifically, the payments were made with "the Debtor's funds traceable to the sale of coal from the Bear Canyon Mine, or on the Debtor's behalf or both."

## IV.  PROCEDURAL HISTORY

The Court ordered the consolidation of the above-referenced adversary proceedings for hearing and trial on issues related to the coal and proceeds of the coal mined by Hiawatha because the adversary proceedings involved the common question of whether the Severed Coal was property of the Estate.  On July 29, 2011, this Court issued its summary judgment (Summary Judgment Ruling) in this miscellaneous adversary proceeding declaring that neither the Severed Coal, nor proceeds of the Severed Coal, were, or had ever been, property of the Estate under § 541.[11]

On appeal to the United States District Court for the District of Utah, the Honorable Chief Judge Ted Stewart, affirmed the Summary Judgment Ruling "except as to its determination that CWM, at the time of the filing of the involuntary petition, held no property interest in the

---

[11] Misc. Adv. Proc. No. 11-8001, Docket No. 92.

coal in situ for purposes of § 541."[12]  The District Court affirmed this Court's conclusion that

*Benton*[13] was controlling concerning whether the Debtor had title to the Severed Coal.  The

District Court concluded that "the property interest [the Debtor] held in the severed coal at the

time of the bankruptcy petition was filed was an incorporeal hereditament, or in other words, a

future right of possession."[14]  The District Court made an express finding that CWM's

incorporeal hereditament is a property interest recognized by § 541 and remanded the matter to

this Court for further proceedings to address the "remaining arguments."[15]

The remaining arguments the District Court identified were: (1) the Trustee's contention

that the Severed Coal should be considered property of the estate or a proceed, product or profit

of property of the bankruptcy estate for reasons argued by the Trustee but not resolved by the

Court in the Summary Judgment Ruling, and (2) how the District Court's analysis may affect this

Court's finding that the parties' preclusion arguments under §§ 549 and 550 were moot.


## V. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record reveals that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment or partial judgment as a

matter of law.[16]  When applying this standard, the Court must examine the factual record in the

---

[12] *Rushton v. Standard Industries* (*In re C.W. Mining Co.*), 489 B.R. 431, 440 (D. Utah 2013). Although this Court made no express finding that the Debtor had no property interest in the coal in situ for purposes of § 541, that is how the District Court interpreted the 2011 Summary Judgment.

[13] *Benton v. State, Div. of State Lands & Forestry, Dep't of Natural Res.*, 709 P.2d 362 (Utah 1985).

[14] *Rushton*, 489 B.R. at 439.

[15] *Id.* at 439.

[16] *See* Fed.R.Civ.P.56(c).

light most favorable to the party opposing summary judgment, extending to that party all reasonable factual inferences.[17]   The Court finds there is no genuine disputed issue of material fact presented in the Summary Judgment Motions and summary judgment is appropriate.

## VI.  ANALYSIS

The scope of this consolidated proceeding was originally simply a determination of whether the Severed Coal and the Severed Coal proceeds were property of the bankruptcy estate. The Court did not intend to address in this consolidated proceeding other property interests the Debtor may have had in the Severed Coal.   The Remand Order, however, has effectively expanded the scope of this consolidated proceeding to a determination of the Debtor's interest in the Severed Coal.

### A.  The Debtor Has No Title to, or Possessory Interest in, the Severed Coal.

The Trustee states: "While the District Court reversed this Court's ruling that the coal in situ was not property of the estate, and concluded it was, the District Court did not go to the next step and determine whether the estate's interest in the coal in situ continued in the Severed Coal or, stated differently, whether the Severed Coal was or remained property of the estate under § 541(a) when removed and sold by Hiawatha in violation of the stay."[18]

The Trustee blatantly distorts the District Court's Remand Order.   The District Court did not reverse any decision of this Court and did not conclude that the coal in situ was property of the estate.   The District Court's order was an express finding that "the bankruptcy court properly

---

[17] *See Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

[18] Misc. Adv. Proc. No. 11-8001, Docket No. 155.

applied Utah law in reaching the conclusion that CWM held no title to the coal in situ."[19]   The

District Court expressly found that "CWM's incorporeal hereditament is a property interest

recognized by § 541."[20]   Having concluded that the Debtor had no title to the coal in situ, the

District Court specifically remanded for determination the Trustee's other claims that the

Severed Coal should be considered property of the bankruptcy estate, or at the very least, a

proceed, product, or profit of property of the bankruptcy estate.[21]

### 1. The Debtor's Exclusive Right to Mine Coal Was a Property Interest Under § 541.

Under § 541, property of the bankruptcy estate includes "all legal or equitable interests of

the debtor in property as of the commencement of the case."[22]   "The statute is deliberately broad

in scope."[23]   Property of the estate includes every conceivable interest including contractual

rights.  It is undisputed that under the Coal Operating Agreement, the Debtor had, by contract,

the exclusive right to mine coal from the Mine.  Moreover, the Debtor still had all rights afforded

to it under the Coal Operating Agreement when the involuntary petition was filed.  Thus, the

Debtor's contractual rights under the Coal Operating Agreement were, without question, a

property interest recognized by § 541.

---

[19] *Rushton*, 489 B.R. at 440.

[20] *Id.* at 439.

[21] *Id.* at 440.

[22]  11 U.S.C. § 541(a)(1).

[23] *In re Graves*, 609 F.3d 1153, 1156 (10th Cir. 2010) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)).

2. **The Debtor's Property Interest in the Severed Coal is Defined by Utah Law.**

"Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."[24]   And while § 541(a) of the Bankruptcy Code should be broadly construed,[25]  it is not without limits and "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case."[26]   The Trustee does not identify, or even argue that there is, some federal interest that requires a result that is different than Utah law.[27]   Accordingly, this Court must look to Utah law to determine the Debtor's property interest in the Severed Coal.

3. **The Debtor's Property Interest in the Severed Coal Was Not a Right to Possession of the Severed Coal.**

The Debtor's property interest in the Severed Coal arose under the Coal Operating Agreement.  This property interest was a contractual right that gave the Debtor, among other rights, the exclusive right to operate and control the mine for purposes reasonably incident to the mining and removal of coal, which included the Severed Coal, from the Mine.   The Coal Operating Agreement is a contract for lease, which is a:

> "species of contract for the possession and profits of lands and tenements either for life or for a certain period of time, or during the pleasure of the parties . . .  as ordinarily employed, the word 'lease' implies a term and a reversion to the owner of the land after its termination, and only a chattel interest passes thereunder. A lease has been defined as

---

[24]  *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979).

[25]  *In re Dittmar*, 618 F.3d 1199 (10th Cir. 1992).

[26]  *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) (citations omitted).

[27]  The Trustee does argue, however, that "state law is only relevant for determining whether a property interest exists—remedies under state law ("an action for conversion") are irrelevant once the Bankruptcy Code applies." This argument is discussed *infra*.

a contract for the possession and profits of lands and tenements on the one side, and a recompense of rent or other income on the other."[28]

The Coal Operating Agreement granted the Debtor an exclusive right to mine coal, but it did not transfer any land associated with the Mine.

The Debtor's property interest in the Severed Coal, the exclusive right to mine the coal, was an incorporeal hereditament, a contingent "future right to possession" of the coal.[29] By definition, "a *future* right of possession" excludes a "*present* right of possession."  "There can be no property in rock, and the title thereto cannot be divested or acquired until it has been taken from the earth."[30]  The Debtor's exclusive right to mine the coal had no effect on the title, or transfer of title, to the coal in situ and the Debtor did not have a present right of possession prior to severance.

The Trustee argues that the issue this Court is addressing on remand is the whether the Severed Coal, after severance, should be considered property of the bankruptcy estate, or at the very least, a proceed, product, or profit of property of the bankruptcy estate.  This is not an unreasonable position since the Debtor's interest in the coal in situ was clearly decided by the District Court.  Further, the Trustee's "remaining claims" to the Severed Coal after severance could not arise while the coal was in situ but could only arise after severance.  But the starting point of the analysis is not, as the Trustee asserts, that the coal in the earth was property of the estate.  The coal in the earth was not property of the estate, rather the property of the estate was

---

[28]  *Consolidated Uranium Mines v. Tax Commission*, 291 P.2d 895 (Utah 1955).

[29] *Rushton*, 489 B.R. at 439.

[30] *Benton*, 709 P.2d at 366 (citation omitted).

the Debtor's exclusive right to mine the coal, and that is the starting point of the analysis with respect to the Severed Coal after severance.

The Severed Coal was not mined by, or on behalf of, the Debtor in the exercise of its exclusive right to mine coal from the Mine.  The Severed Coal was mined by Hiawatha in contravention of the Debtor's exclusive right to mine coal from the Mine.  The Trustee maintains that the Severed Coal is property of the estate, not because it was mined by the Debtor, but because the Debtor had the exclusive right to mine the Severed Coal.[31]   The issue is straightforward: does the Debtor's property interest, the exclusive right to mine coal, include coal that the Debtor did not mine?

The Trustee asserts that the Defendants' argument blurs and misconstrues several important and distinct concepts because "'title' on the one hand, and an 'interest of the debtor in property' recognized under § 541, on the other hand are not the same thing (and the term 'owns' is imprecise and not helpful here.)"[32]   In fact, it is the Trustee who blurs and misconstrues concepts.   While "title" and "interest in property" are clearly distinct concepts, the Trustee asserts that the District Court determined that "§ 541(a) and federal law recognize the estate's interest in the coal in situ, or in other words, that the coal in situ was property of the estate at the time of the petition and is protected by the Code."[33]   The Trustee is correct that § 541(a) and

---

[31] If the Debtor had mined the Severed Coal, there clearly would be no claim against any other person for wrongful removal.

[32] The Court finds it interesting that the Trustee asserts "owns" is an imprecise term because the Trustee's First Claim for Relief in Adversary Proceeding # 09-2375 seeks a declaratory judgment against all defendants regarding "ownership" of the Severed Coal.  Adv. Proc. 09-2375, Docket No. 1. In his prayer for relief the Trustee asks for a declaratory judgment that the Debtor obtained legal title to the coal Severed Coal and equitable title to coal in the coal seams.

[33] Misc. Adv. Proc. No. 11-8001, Docket No. 155.

federal law recognize the estate's interest in the coal in situ, but the Trustee's "in other words" assertion is clearly incorrect. The property interest of the estate was the "right to mine coal": it was not the coal.

Under Utah law, a contract provision that grants an exclusive right to mine stone creates a contingent future right of possession.[34] Lessees, however, only have possessory rights in the stone they quarry within the terms of the lease: what the lessee does not quarry remains the property of the owner in fee.[35] The Debtor had no present right to possession of the Severed Coal when it was in the earth and, notwithstanding its "future right to possession," the Debtor only had the right to possess the coal it mined.

The *Benton* decision clearly addresses a lessee's claims that arise after severance. In *Benton*, the plaintiff, United Development, asserted its claim in terms of trespass, trover, and conversion.[36] "Essential to that claim would be proof that United Development had possession of the limestone it argues was wrongfully removed."[37] "'The general rule is that an action for conversion is not maintainable unless the plaintiff, at the time of the alleged conversion, is entitled to the immediate possession of the property. An interest in the property which does not carry with it a right to immediate possession is not sufficient; the right to maintain the action may not be based upon a right to possession at a future time.'"[38] An exclusive right to mine only gives lessees possession of the stone they remove, but what the lessee does not remove remains

---

[34] *Benton,* 709 P.2d at 366.

[35] *Id.*

[36] *Id. at 365*.

[37] *Id.*

[38] *Id.* at 366 (quoting *Johnson v. Flowers*, 228 P.2d 406, 407 (Utah 1951)).

property of the owner in fee.[39]   The *Benton* court concluded that, even though United Development had the exclusive right and privilege to mine, remove, and dispose of all the limestone, it did not have the possessory rights in the stone necessary to maintain a cause of action for conversion because United Development did not remove the stone.  In addition to determining that an incorporeal hereditament has no effect on title to the coal in situ, the *Benton* court clearly determined that lessees are only entitled to possession of stone they quarried and removed within the terms of the lease.

Based on the precedent established by *Benton*, the District Court held, as did this Court, that the Debtor's right to mine the Severed Coal was an incorporeal hereditament.[40]   In addition to affirming this Court's decision that under *Benton* the estate did not have title to coal in the earth, the District Court further confirmed that under *Benton*, the Debtor's incorporeal hereditament was a contingent "future right to possession" of coal, and that "such a property right is insufficient to maintain a claim for conversion or trover . . . ."[41]

Any distinction the Trustee draws between the Severed Coal before severance and the Severed Coal after severance is unimportant because the Debtor's property interest in the Severed Coal before severance and after severance was the same: it was the exclusive right to mine coal.  The Debtor only had the right to possess the coal it mined and had no possessory right to the Severed Coal that it did not mine.  Since the Debtor had no possessory right to the Severed Coal, the Severed Coal was not property of the estate.  Moreover, estate property as

---

[39] *Id.*

[40] *Rushton*, 489 B.R. at, 439.

[41] *Id.*

defined in § 541 does not include proceeds, product or profit from non-estate property. Therefore, any proceeds, products or profits from the Severed Coal are not property of the estate because the Severed Coal was not property of the estate.

The Debtor's property interest, its incorporeal hereditament, is protected.  The estate's property interest in the Severed Coal may give rise to a claim for infringement of the Debtor's incorporeal hereditament if the Trustee can state a claim and establish damages.[42]  If the lessee's exclusive right to mine and remove stone is infringed upon, the lessee may have a claim for damages that are in fact sustained.  The Trustee, however, has no claims based on a right to possession of the Severed Coal.

### B. The Trustee's Additional Claims Have No Effect on the Debtor's Property Interest in the Severed Coal.

Trustee argues that "state law is only relevant for determining whether a property interest exists—remedies under state law ("an action for conversion") are irrelevant once the Bankruptcy Code applies."  The Trustee's argument is confusing but he appears to be suggesting that a bankruptcy trustee has no remedies under state law or alternatively, that remedies available under the Bankruptcy Code in fact determine an estate's interest in property.  Not surprisingly, the Trustee cites no legal authority to support his assertion that remedies under state law are irrelevant once the Bankruptcy Code applies.

Any contention that remedies under state law are irrelevant in bankruptcy is unsupportable: "One of the central precepts of bankruptcy law is that 'a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition.  Filing a bankruptcy petition does not expand or change a debtor's interest

---

[42] *See Jones Cut Stone Co. v. New York, 166 N.Y.S.2d 742 (N.Y. 1957).*

in an asset.'"[43]   "Resort to § 542 cannot be used to create a federal interest that requires a different result or broaden the trustee's interest in estate property."[44]

*Benton* makes clear that under Utah law the Debtor had no possessory interest in the Severed Coal before severance or after severance.   The Trustee nevertheless argues that, the Severed Coal was estate property, or at the very least, a proceed, product, or profit of property of the estate property and that he is entitled to turnover because of his additional claims which are:

(1) The Debtor and not Hiawatha held the permits to mine the Bear Canyon mine during the period in question;

(2) The Debtor expended money and prepared the Severed Coal for extraction;

(3) The bankruptcy estate is contractually obligated to pay the royalties owed on the Severed Coal;

(4) The Debtor's sale of the Mine to Hiawatha was made in violation of the automatic stay; and

(5) For equitable reasons, the Severed Coal should be found to be property of the estate.

The Trustee cites to case law for broad legal principles but cites to no specific legal authority to support his additional claims that the Severed Coal was property of the bankruptcy estate, or at the very least, a proceed, product, or profit of property of the bankruptcy estate.

The Trustee's first claim that the Debtor, and not Hiawatha, held the Utah Division of Oil, Gas and Mining (DOGM) permit during the period in question and the all coal removed from the mine is therefore the Debtor's property is simply a bald assertion.   The Trustee cites no

---

[43] *Weinman v. Graves (In re Graves)*, 609 F.3d 1153, 1156 (10th Cir. 2010) (quoting *In re Sanders*, 969 F.2d 591, 593 (7th Cit. 1992)).

[44] *Id.* at  1157..

legal authority whatsoever to support this claim.  The Severed Coal was the property of the fee owners, COP or the federal government.  The fact that Hiawatha may not have been authorized by DOGM to conduct mining operations does not change the result dictated by *Benton*.  Hiawatha may have been in violation of DOGM regulations and may be subject to penalties for this violation, but it does not alter title to the coal and give the Debtor the possessory interest in the coal after severance.

The Trustee's next argument is that the Debtor expended significant money and prepared the Severed Coal for extraction, and the Debtor should be deemed to be the equitable owner of the Severed Coal.  Again, the Trustee cites no legal authority for this proposition.  In a footnote, the Trustee disingenuously argues that the case of *Kennedy v. Combined Metals Reduction Co.*, 51 P.2d 1064 (Utah 1935) "suggests the proper analysis is that the "incorporeal hereditament" becomes a "corporeal hereditament" through expenditures and labor."  The *Kennedy* case suggests nothing of the sort and the Court will not devote any time to this "red herring."  Again, if the estate suffered damages as a result of Hiawatha's removal of coal the Debtor had prepared for extraction, the Trustee's remedy is to seek recovery of those damages, not possession of the Severed Coal.  Simply put, damages are dependent on one's property rights, but one's property rights are not dependent on, or defined by, damages.

The Trustee also disingenuously argues that the bankruptcy estate is contractually obligated to pay federal royalties for the Severed Coal.  This claim too, is nothing more than an unsubstantiated allegation.  The Trustee has stated no factual or legal basis for this assertion.  The Trustee is also well aware that in determining COP's cure claim, the Court previously found

that the Debtor is not liable for the royalties on coal that was mined by Hiawatha[45] and to protect the estate from this very claim, the Trustee may, and has in fact, withheld these estimated royalty amounts from payments that should otherwise be payable to COP.  The proof of claim filed by the Office of Natural Resource Revenue (ONRR) is consistent with the Court's prior finding. The proof of claim also makes clear that ONRR is asserting that COP is responsible for the royalty payments and that the ONRR is well aware that Hiawatha is the entity that mined the Severed Coal and may be subject to liability.

The Trustee also argues that the Debtor's June 2008 sale of the Mine to Hiawatha was void as a violation of the automatic stay.  The Trustee is well aware that this Court previously determined in the § 303(f) Ruling[46] that the Debtor was not prohibited from transferring the Mine and the transfer could not be avoided as a stay violation.  In Adversary Proceeding #08-2338, the Trustee argued that the Debtor's transfer of the Mine to Hiawatha as void as a violation of the automatic stay.  The Court rejected this argument but did find that the Debtor's transfer of the Mine to Hiawatha was an authorized post-petition transfer under Section 549.  But, even if the transfer of the Mine had been a stay violation, a stay violation cannot create property rights that do not otherwise exist.[47]

Finally, the fifth claim the Trustee argued to the District Court is that the Severed Coal should be found to be property of the estate under § 541 for equitable reasons.  The only argument the Trustee advances is that Debtor has borne the significant economic burden of

---

[45]  Case No. 08-20105, Docket No. 1158.

[46]  Case No. 08-20105, Docket No. 138.

[47] *Devenger v. Forant (In re Forant)*, 331 B.R. 151, 157 (Bankr. D. Vt. 2004).

paying royalties on the Severed Coal.  Not only does the Trustee fail to articulate any equitable principle that would apply in this case, but he ignores a very fundamental doctrine of equity jurisprudence — "equity follows the law."  The argument that the Debtor has borne the burden of paying royalties would be an element of damages that the Trustee may assert as a claim for infringement of the Debtor's right to mine the Severed Coal.  Because the estate has an adequate legal remedy, equity should not be invoked.[48]  Additionally, the Trustee's argument lacks merit because, as noted above, the Court previously found that the Debtor is not liable for the royalties on coal that was mined by Hiawatha and the estate is not bearing the burden of paying royalties on coal Hiawatha mined.

The Trustee's claim that coal the Debtor did not mine is property of the estate is inconsistent with Utah law.  The Trustee may have a claim against Hiawatha for damages from infringement on the Debtor's incorporeal hereditament, but the fee owners have a claim against Hiawatha if it wrongfully removed coal from their property.  A holding by this Court that the Severed Coal after extraction is the Debtor's property would deprive the fee owners of their claims for wrongful removal of the Severed Coal.

The Court finds that the Debtor's incorporeal hereditament, the right to mine coal, is a property interest that is recognized by § 541.  However, the fact that a property interest is recognized under § 541 does not change the character of the property interest.[49]  Section 541

---

[48] *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S. Ct. 2031, 2035, 119 L. Ed. 2d 157 (1992) ("It is a 'basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'"); *Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104 (9th Cir. 1994) ("[F]or equitable relief to be appropriate, there must generally be no adequate legal remedy.").

[49] *Id.* at 1156 (citing *In re Sanders,* 969 F.2d 591, 593 (7th Cir.1992)).

does not expand or broaden the estate property beyond that held by the prepetition Debtor.[50]

*Benton* is clear and applicable in this case, and precludes any claim that the Debtor holds title to, or has a present possessory right in the Severed Coal. The Debtor's incorporeal hereditament did not become corporeal property simply because the Debtor expended resources preparing the coal for extraction or simply because the bankruptcy was filed. The estate's property interest in the Severed Coal, is protected and the Trustee is not without a remedy if the estate has suffered an injury, but it is not the remedy the Trustee seeks.

The Debtor's property interest in the Severed Coal was not a present right to possession of the Severed Coal. Because the Debtor did not have a present right to possession of the Severed Coal, the Debtor could not use, sell or lease the Severed Coal under § 363 and the Trustee cannot demand turnover under § 542.[51] As a matter of law, the Severed Coal mined and sold to third parties by Hiawatha between June 24, 2008, and June 30, 2009 was never property of the estate. As a result, the Trustee cannot assert claims against the Defendants for turnover of the Severed Coal or its value.

### C.  The Trustee Has No § 550 Cause of Action With Respect to the Severed Coal.

The District Court further directed this Court to address the effects of the District Court's ruling on the parties' preclusion arguments under § 550. The Trustee's § 550 claim fails for two reasons. First, the Trustee has no § 550 claim because there can be no avoided transfer of the Severed Coal, and second, if the Trustee has a remedy under § 550, he has already elected it.

---

[50] *Id.*

[51] 11 U.S.C. § 542(a).

**1.  The Trustee Has No § 550 Remedy With Respect to The Severed Coal Because the Severed Coal is Not Property of the Estate.**

If the Severed Coal was not property of the estate, there was no transfer of property of the estate for the Trustee to avoid under § 549, and therefore no remedy available under § 550. Because the Severed Coal was never property of the estate, there is no claim under § 549 with respect to the Severed Coal, and arguments that the Trustee has elected his remedy under § 550 are moot.

**2.  If The Trustee Has a § 550 Remedy With Respect to the Severed Coal, He has Elected His Remedy.**

If the Court were to conclude, as the Trustee argues, that the Severed Coal was property of the estate and the estate had the right to immediate possession of the Severed Coal when Hiawatha mined it, then the Court alternatively concludes that the Trustee's claims are barred by the Trustee's election to recover the Mine as opposed to its value.  The complaint filed by the Trustee in Adversary Proceeding #08-2338 sought recovery of the Mine, all equipment, and personal property.  In its second amended order granting the Trustee's remedy claims under Section § 550(a) as against Hiawatha, the Court granted the Trustee's § 550(a) claim for recovery of the transferred property rather than its value.

Section 550(a) grants courts two levels of discretion: first, in determining whether to allow recovery in any form; and second, in determining which of the alternative forms of relief to grant.  If the relief is granted, a court may either allow recovery of the transferred property or its value.[52]  Concerning this second element of discretion, § 550(a) is clear and unambiguous: the Trustee may recover property or, if the Court so orders, the value of the property transferred, but

---

[52] *In re Bremer*, 408 B.R. 355, 359 (10th Cir. B.A.P. 2009).

not both.[53]  Thus, under § 550(a), where the estate property is unrecoverable, courts may allow a trustee to recover the value of the property under § 550(a).  Section 550(d) prohibits more than one satisfaction under § 550(a).[54]

In its ruling, the Court specifically recognized that Hiawatha had mined substantial amounts of coal from the mine during its time in possession and the estate has been diminished as a result.  The Court noted that the parties disputed the property's value, including the Severed Coal, that the value of the property was not readily determinable, and that the factors weighed in favor of return of the Mine rather than its value.

The Court's findings of fact in that order are clear.  Hiawatha had mined coal, and the estate had been diminished; there was less coal to be mined after Hiawatha had mined than there was prior to the transfer of the Mine.  However, the appropriate remedy was the one the Trustee sought, namely, recovery of the Mine rather than its value.  The Trustee was awarded the property rather than the value.

The Trustee argues that the Severed Coal should be separated from the transferred assets he has recovered. This attempted sleight of hand is opposite to the Court's findings in granting the Trustee his requested § 550(a) remedy.  The Court expressly recognized that Hiawatha had mined coal and had diminished the value of the mine.  The value of the property the Trustee sought to recover, including the coal that Hiawatha had mined, was disputed and was not readily determinable.  The Court clearly had the Severed Coal in its ken at the time it issued its ruling granting the Trustee his requested relief.  The Court included, not excluded, the Severed Coal in its order.  The Trustee could have elected to leave the mine under Hiawatha's control and pursue

---

[53] See *In re Integra Realty Resources, Inc.*, 354 F.3d 1246 (10th Cir. 2004).

[54] See *In re Trout*, 609 F.3d 1106, 1108 n. 2 (10th Cir. 2010).

his remedy for value, but elected the recovery of the asset, not the value.  The Trustee cannot continue to pursue alleged subsequent transferees when property, as opposed to value, has been recovered.  The Court therefore concludes that, to the extent the Trustee seeks to recover the Severed Coal or its value, his claims are precluded by this Court's order awarding the Trustee his requested § 550(a) remedy.

The Trustee argues that the election of remedy argument is inapplicable because his claim to the Severed Coal was specifically reserved by the stipulation of parties and this Court's order.  The Court will not permit the Trustee to re-characterize his claims for damages, which were preserved, to a claim for recovery of the Severed Coal.  These damages claims are, as the Trustee has argued, capable of being split from the Trustee's § 549 claim and relate to the estate's property interest under § 541 that the Court has previously articulated.  Damages from these claims do not necessarily result from the diminution of value of a transferred asset and are not dependent on § 549 or on a determination of ownership of the Severed Coal, which is the matter being determined in this consolidated proceeding.  The Trustee may have such a claim, but it is not a claim to the Severed Coal or its value.  The unrelated claims are the result of the estate's property interest under § 541, the incorporeal hereditament, and are the subject of other adversary proceedings which remain pending.

Any claims by the Trustee to the Severed Coal under §§ 549 and 550 are moot because the Severed Coal was not property of the estate.  But if the Trustee's claims were not otherwise moot, those claims would regardless be barred by § 550(a). While the Trustee may be entitled to recover provable damages resulting from interference with the Debtor's mining  rights he is not entitled to recover the full market value of the coal the Debtor did not mine.

### D.  The Rule 56(d) Motion is Denied

The Trustee has submitted reports from the Trustee's mining consultant, Norwest Corporation, stating the amount of Severed Coal that was mined.  For purposes of this Motion the Court will treat the Norwest conclusions as true, but determines that the conclusions presented in the Norwest reports are not material to the issues before the Court.  For this reason, the Court will deny the Rule 56(d) Motion, which requests additional time for discovery concerning the Norwest Reports.

## VII.  CONCLUSION

Accordingly, the Court will DENY the Trustee's Motion, DENY the 56(d) Motion, and GRANT the remaining Summary Judgment Motions in favor of Coal Purchasers, Hiawatha, COP Defendants, and those defendants who joined therein.

End of Document